# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CALVIN MITCHELL (R18381),    )
    )
    Petitioner,    )
    )    No. 18-cv-04317
    v.    )
    )    Judge John F. Kness
    )
BRITTANY GREENE, Warden,    )
Western Illinois Correctional Center,    )
    )
    Respondent.    )

## MEMORANDUM OPINION AND ORDER

This case involves a habeas petition filed by an Illinois prisoner serving a forty-year sentence for a murder he committed when he was seventeen years old. Petitioner Calvin Mitchell, a prisoner at the Western Illinois Correctional Center, was prosecuted as an adult and convicted of first-degree murder in an Illinois court. Because he was convicted as an adult, Petitioner must serve 100% of his sentence under the Illinois Truth in Sentencing law. This means that Petitioner will be in his late fifties when he is released from prison.

Petitioner alleges that the Truth in Sentencing law, at least as applied to him, violates *Miller v. Alabama*, 567 U.S. 460, 479 (2012), which explains that the Eighth Amendment prohibits mandatory life sentences without parole for juvenile offenders. Petitioner seeks through this proceeding to transform his full-term sentence into one in which he can earn a day of good time credit for every day served—a benefit known

in Illinois as "day for day" credit. Because he has already served more than 20 years of the 40-year sentence, Petitioner believes he is entitled to immediate release.

As explained below, neither *Miller* nor related cases preclude imposing a full-term 40-year prison sentence on a juvenile convicted of murder. Petitioner did not receive an explicit term of life imprisonment—a prerequisite to applying *Miller*—nor does his 40-year sentence constitute a *de facto* life sentence within the meaning of applicable precedent. Accordingly, the *Miller* rule does not control this case, and the Court thus denies the habeas corpus petition on the merits. Because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court further declines to issue a certificate of appealability.

## I.   BACKGROUND

### A.   Criminal Conduct and Conviction

As established through proceedings held in the courts of Illinois, Petitioner murdered a rival gang member in retaliation for his friend's murder. *Illinois v. Mitchell*, No. 1-03-0100 (Ill. App. Ct. May 20, 2004) (Dkt. 16-1, pg. 15). Petitioner committed the murder on May 22, 1999, a little less than one month after his seventeenth birthday. *Id*.; Illinois Department of Corrections Internet Inmate Status, Calvin Mitchell, R18381, *available at* https://www.idoc.state.il.us/subsections/search/ inms_print.asp? idoc=R18381 (last visited May 17, 2021).

On May 20, 1999—one day after Petitioner's friend was murdered—Petitioner encountered a member of the rival gang that Petitioner blamed for his friend's murder. (Dkt. 16-1, pg. 15.) Seeing the individual seated on a bicycle in an intersection,

Petitioner "drove toward the victim." *Id*. It is not entirely clear whether Petitioner made contact, but the individual survived this first incident. *Id*. On May 22, 1999, Petitioner was returning from his murdered friend's funeral and again "accelerated his car" toward the same rival gang member. *Id*. This time, Petitioner "fatally struck the victim in the intersection." *Id*.

Petitioner gave a written statement to the police confessing to the murder. (Dkt. 16-1, pg. 15.) At trial, Petitioner conceded that he struck the victim, but he contended that both incidents were accidents and he did not intend to kill the victim. *Id*. Petitioner further testified that, because of his friend's death, he was depressed and driving "wild" after a few drinks before the first incident with the victim. *Id*. Despite this testimony, the jury found Petitioner guilty of murder. *Id*. at 16.

Petitioner was 17 years old at the time of the murder. As a general principle, crimes committed by minors under the age of 18 in Illinois are to be resolved in the juvenile court system. 705 ILCS 405/5-120. Illinois law, however, requires an automatic transfer of certain cases to criminal court—meaning that the juvenile is then treated as an adult. 705 ILCS 405/5-130. Because Petitioner both committed this offense when he was at least 16 years old and was charged with first degree murder, Petitioner's case was automatically transferred from juvenile court to criminal court. *Id*.

Prosecuted as an adult, Petitioner faced a statutory sentencing range of 20 to 60 years for murder. (Dkt. 16-1, pg. 20 (citing 730 ILCS 5/5-8-1(a)(1) (West 2002)). Following Petitioner's conviction, the state trial judge imposed a sentence of 40 years

of imprisonment. In general, Illinois prisoners can earn one day of good conduct credit for every day of good behavior, commonly referred to as "day for day" credit. *United States ex rel. Sprinkle v. Dawson*, No. 12-cv-00288, 2012 WL 1985896, at *3 (N.D. Ill. June 4, 2012). Under the Truth in Sentencing law applicable to Petitioner, however, Petitioner cannot earn good conduct credit toward his sentence; persons convicted of first-degree murder must serve 100% of their sentence. 730 ILCS 5/3-6-3(a)(2)(i) (West 2002). This means that Petitioner will not be eligible for release from prison until he is around 57 years old.

**B.    Postconviction Proceedings**

Following his criminal conviction, Petitioner began a lengthy series of postconviction proceedings in both Illinois state court and this Court. Because, as explained below, the Court holds that the petition should be denied on the merits, it is not essential to resolve the challenging procedural issues generated by the lengthy record in this case. In the interest of completeness, however, the Court will summarize the relevant portions of Petitioner's postconviction record.

1.    <u>State Postconviction Proceedings</u>.

Although Petitioner's current argument in this Court is predicated upon *Miller*, he understandably made no mention of the case in his direct appeal and initial postconviction petition proceedings as they occurred before the decision was issued. (Dkt. 1, pp. 1, 12.) Following his conviction, Petitioner pursued a direct appeal before

the Appellate Court of Illinois. That court, however, affirmed the trial court's judgment. (Dkt. 58, p. 2.) Petitioner did not petition for leave to appeal to the Supreme Court of Illinois. (*Id*.)

Following the resolution of his direct appeal, Petitioner filed the first in a lengthy series of postconviction petitions to the Illinois courts. (Dkt. 16-1, pg. 3.) In March 2015, Petitioner provided his sixth supplement to his then-pending successive petition with a claim based on *Miller*—an effort made possible by the then-recent decision of the Supreme Court of Illinois in *Illinois v. Davis*, 6 N.E.3d 709, 722 (Ill. 2014); (Dkt. 16-2, pg. 6). Following *Davis*, *Miller* applies retroactively in the courts of Illinois for purposes of the Illinois Post Conviction Hearing Act. *Illinois v. Buffer*, 137 N.E.3d 763, 766 (Ill. 2019) ("In March 2014, this court held that *Miller* applied retroactively to cases on collateral review"). For Petitioner, the ruling in *Davis* meant that he was then permitted to raise a *Miller* claim in a successive postconviction proceeding. *See* 6 N.E.3d at 722. *Davis* anticipated the Supreme Court's later decision in *Montgomery v. Louisiana*, which held that *Miller* is retroactive in cases on state collateral review. 577 U.S. 190, 208-09, 212 (2016).

On February 4, 2015, however, Petitioner withdrew the *Miller* issue (or so he contends; the record is not entirely clear) and did not pursue it in a state successive postconviction petition. (Dkt. 22, pg. 6.) Instead, Petitioner attempted to raise the issue via motions to bring original habeas corpus and mandamus actions before the Supreme Court of Illinois. (*Id*.) On September 25, 2018—four days after the petition

was docketed in this Court—the Supreme Court of Illinois declined those requests. (*Id.* at 14, 16.)

    2.   <u>Federal Habeas Proceedings</u>.

In his initial *pro se* habeas corpus petition before this Court, Petitioner alleged that the application of Illinois's Truth in Sentencing law to him is unconstitutional under *Miller*. In Petitioner's view, the Truth in Sentencing law deprives him of a meaningful opportunity to obtain his release based upon his maturity and rehabilitation. (Dkt. 1, pg. 4.) Put another way, Petitioner argued in his initial submission that *Miller* mandates he receive day-for-day credit on his sentence.

Shortly after filing his original petition, Petitioner submitted an amended petition. (Dkt. 9.) Although that filing mentioned *Miller*, Petitioner instead contended that the automatic transfer provision shifting his prosecution from juvenile court to (adult) criminal court was unconstitutional under due process and equal protection principles. (*Id.*) Petitioner then submitted a supplemental filing reasserting the Truth in Sentencing argument. (Dkt. 13.)

Respondent moved to dismiss the case for failure to exhaust an available state court remedy. (Dkt. 15, pg. 1.) According to Respondent, Petitioner was, at that time, pursuing his successive postconviction proceeding regarding the Truth in Sentencing issue. (*Id.* at 4.)

In response, Petitioner argued that he had in fact exhausted the Truth in Sentencing claim through both the state habeas corpus petition and mandamus action he presented to the Supreme Court of Illinois. (Dkt. 22.) In the light of Petitioner's

assertion, and with the Court's permission (*see* Dkt. 27), Respondent withdrew the motion to dismiss. (Dkt. 23.) Although the parties then briefed that petition on the merits (Dkt. 35, 39-41), the Court did not issue a ruling but instead appointed counsel to represent Petitioner. (Dkt. 44, 49.)

After appearing in the case, Petitioner's appointed counsel filed a new, amended petition (the "Amended Petition") with a single claim: namely, that the requirement Petitioner serve 100% of his sentence was unconstitutional under *Miller*. (Dkt. 58.) Petitioner did not renew his earlier challenge to the automatic transfer provision. (*Id.*)

The Amended Petition presented an additional wrinkle: the 2019 ruling of the Appellate Court of Illinois in *Illinois v. Othman*, No. 2019 IL App (1st) 150823, 2019 WL 117980, at *19 (Ill. App. Ct. Mar. 12, 2019). Othman held that the Truth in Sentencing law as applied to juveniles violated the Eighth Amendment under *Miller* and related cases. *Id*. Petitioner contended that this Court should follow *Othman*. (Dkt. 58.)

In response, Respondent argued that the Amended Petition should be dismissed either (1) for failure to exhaust in view of *Othman*, or (2) because the underlying claim was meritless. (Dkt. 61.) On February 18, 2020, the Court agreed that the underlying claim was unexhausted and stayed the case so that Petitioner could exhaust his claim under *Othman*. (Dkt. 64.) Ten days later, the Executive Committee reassigned the case to the undersigned judge. (Dkt. 65.)

On April 7, 2020, the Appellate Court of Illinois vacated the relevant portion of *Othman* in compliance with a supervisory order of the Supreme Court of Illinois. *Illinois v. Othman*, No. 2020 IL App (1st) 150823-B, 2020 WL 1689792, at *1 (Ill. App. Ct. Apr. 7, 2020). This order was based on an agreement under which (1) Othman acquiesced to the State's request for a supervisory order from the Supreme Court of Illinois stating that the sentencing issues were moot as applied to Othman, and (2) the State agreed not to dispute the remaining part of the opinion favorable to Othman. *Id.*

In response to this development, Petitioner argued that vacating the relevant portion of *Othman* eliminated a potential state court remedy. (Dkt. 67.) Accordingly, Petitioner urged the Court to excuse any procedural default and instead to resolve the case on the merits. (*Id.*) Respondent countered that the claim was procedurally defaulted because he never properly exhausted it before the Illinois courts and his time for doing so had expired. (Dkt. 92, pgs. 1-3.) Respondent did not address Petitioner's argument that any procedural default should be excused. On March 30, 2021, the Court lifted the previously imposed stay for the purpose of resolving the Amended Petition. (Dkt. 141 (vacating Dkt. 64).)[1]

## II.   DISCUSSION

Although the history of Petitioner's conviction and resulting postconviction proceedings is dense and potentially generates complex habeas-procedure questions,

---

[1] As the case was pending, Petitioner filed numerous motions seeking release based on, among other reasons, the COVID-19 pandemic. (*E.g.*, Dkt. 91, 100, 102, 104.) In addition, the Court granted Petitioner's appointed counsel leave to withdraw due to substantial disagreements between Petitioner and his attorneys. (Dkt. 91, at pg. 3.)

the merits of Petitioner's argument are comparatively straightforward: Petitioner asserts that, because he was 17 years old when he committed murder, it is unconstitutional to force him to serve 100% of his 40-year prison term. Petitioner bases this argument on *Miller* and related cases, which establish, variously, that sentencing a juvenile offender to a mandatory term of life imprisonment (either *de jure* or *de facto*) without the possibility of parole violates the Eighth Amendment. *Miller*, 567 U.S. at 479; *Illinois v. Reyes* 63 N.E.3d 884, 888 (Ill. 2016).

As explained below, this case presents the uncommon situation in which procedural considerations should be bypassed in favor of a direct merits review. Put plainly, Petitioner is not entitled to habeas relief under any construction of *Miller* and its cohort. No binding authority establishes that the Eighth Amendment's Cruel and Unusual Punishments Clause precludes imposing a full-term 40-year prison sentence on a defendant who committed murder as a juvenile. Petitioner's claim must therefore be denied.

## A.     Exhaustion and Procedural Default

In opposing Petitioner's earlier motion for reconsideration (Dkt. 67), Respondent argued that, because Petitioner no longer has an available state court remedy, his claim is procedurally defaulted. (Dkt. 92.) Petitioner agrees he has no available state court remedy. (Dkt. 19, pg. 1.) But Petitioner argues that this means he has exhausted his state court claims. (*Id*.) ("Petitioner did exhaust all state remedies"); (Dkt. 67, pg. 1.) ("Petitioner no longer ha[s] any available remedy in state court. . . .");

(Dkt. 69, pg. 1-2.) ("Truth-N-Sentencing [sic] issue is deemed exhausted. . . . Petitioner has no remaining state court remedies. . . .").

Both positions are questionable. In 2015, Petitioner raised but then (according to him) abandoned his *Miller* claim, which means he likely failed to exhaust that claim. (*See* Dkt. 22 at 6.) But Petitioner's abandonment would result in a procedural default only if his successive petition were premised on a claim Petitioner raised, or should have raised, in his previous state petition. *See* 725 ILCS 5/122-3. In 2016, after Petitioner abandoned his *Miller* claim, the Supreme Court of Illinois decided *Illinois v. Reyes*, which extended *Miller* to *de facto* life sentences. 63 N.E.3d 884 (Ill. 2016). Petitioner could not, of course, have premised his 2015 petition on the 2016 *Reyes* decision. It is possible, therefore, that Petitioner did not cause a procedural default by abandoning his *Miller* claim in 2015.

This history raises difficult procedural questions, but the Court need not resolve them to decide the Amended Petition on the merits. In the ordinary course, the Court should dismiss without prejudice (or, perhaps, stay) a habeas corpus petition to allow the prisoner the opportunity to exhaust the claim in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Rhines v. Weber*, 544 U.S. 269, 274-76 (2005); *Rose v. Lundy*, 455 U.S. 509, 514 (1982). This rule, however, is predicated upon comity; it is not jurisdictional. *Rhines*, 544 U.S. at 274; *see also Granberry v. Greer*, 481 U.S. 129, 131-32 (1987). As the Seventh Circuit has explained, there is "no necessary priority among non-jurisdictional reasons for rejecting a suit or claim. It makes sense to tackle the merits first when they are easy . . . while other procedural defenses, such as waiver,

default, or lack of exhaustion, remain in the background." *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State")).

In the Court's view, this case presents the rare situation in which proceeding directly to a resolution on the merits is warranted. *See*, *e.g.*, *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018) ("Rather than work our way through the maze of these procedural arguments, however, we think it best to cut to the chase and deny [the] claim on the merits"). As explained below, the merits of this case are straight-forward. But the exhaustion and default issues, by contrast, are complex. Accordingly, the Court finds that it is best to resolve the case on the merits while the default and exhaustion issues "remain in the background." *Estremera*, 724 F.3d at 775. Indeed, as the Seventh Circuit explained in *Boughton*, this approach is "consistent with the interests of comity, finality, federalism, and judicial efficiency that are at the heart of both the exhaustion requirement and the procedural default doctrine." 884 F.3d at 698.

### B. Petitioner's Substantive Claim

#### 1. Relevant Pleading and Standard of Review.

In turning to the merits of the Amended Petition, two points bear emphasis at the outset. *First*, the pleading (Dkt. 58) filed by Petitioner's former counsel (the Amended Petition) is the controlling pleading and supersedes any earlier pleadings. *NewSpin Sports, LLC v. Arrow Electronics Inc.*, 910 F.3d 293, 302 n.2 (7th Cir. 2018);

*United States ex rel. Ward v. Yurkovich*, No. 11 C 3489, 2011 WL 5525940, at *5 (N.D. Ill. Nov. 14, 2011). Before the Court entered a stay (Dkt. 64) on February 18, 2020, the parties completed briefing on the merits of the Amended Petition. (Dkt. 61, pg. 5; Dkt. 63, pg. 2-4.) With the lifting of the stay, the Amended Petition is amenable to resolution.

*Second*, the adjudication of the merits is not governed by the requirements of the Antiterrorism and Effective Death Penalty Act (AEDPA) set forth in 28 U.S.C. § 2254(d). AEDPA sharply limits "the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" *Johnson v. Williams*, 568 U.S. 289, 298 (2013) (quoting 28 U.S.C. § 2254(d)). When a federal claim has "been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This presumption may be overcome, however, when "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100.

Petitioner's case is one in which there is, in fact, reason to believe that no state court has issued a merits adjudication. In the Court's view, the Supreme Court of Illinois most likely rejected Petitioner's habeas corpus and mandamus actions as improper procedural vehicles for raising a *Miller*-grounded argument. Petitioner's avail-

able state vehicle for asserting the *Miller* claim was a successive postconviction petition (Petitioner did not take that approach). *Montgomery*, 577 U.S. at 208-09; *David*, 6 N.E.3d at 722.

A state habeas corpus petition was futile because constitutional claims, such as *Miller*, cannot be raised by that device. 735 ILCS 5/10-124. As explained in *Beachman v. Walker*:

> It is well established that an order of habeas corpus is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court that lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction that entitles him to release. A complaint for order of habeas corpus may not be used to review proceedings that do not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights.

896 N.E.2d 327, 332 (Ill. 2008). Conversely, Petitioner's mandamus filing was improper because a state mandamus action is generally reserved for situations in which a party seeks "performance of official duties by a public officer where no exercise of discretion on his part is involved." *Illinois v. Castleberry*, 43 N.E.3d 932, 940 (Ill. 2015) (internal citations and quotation marks omitted). But Petitioner is challenging the validity of his criminal sentence, not seeking action by a state official. To be sure, a mandamus action can be brought in Illinois challenging the decision of the Illinois Department of Corrections to deny good-conduct credit toward a sentence. *Sprinkle*, No. 12 C 0288, 2012 WL 1985896, at *1. Petitioner, however, has not shown (nor is it likely that he could show) any right to good-conduct credit under Illinois law. Based on these considerations, it is likely that the Supreme Court of Illinois rejected Petitioner's habeas and mandamus motions on state procedural grounds. This leads to

the unavoidable conclusion that no Illinois court addressed the merits of Petitioner's *Miller* claim.

Because the Court is foregoing both the exhaustion and procedural-default analyses and proceeding directly to the merits, the deferential standard of review under 28 U.S.C. § 2254(d) does not dictate how the Court must review Petitioner's claim. *See Adorno v. Melvin*, 876 F.3d 917, 920 (7th Cir. 2017). Given this circumstance, the Court must apply the pre-AEDPA standard and "dispose of the matter as law and justice require." 28 U.S.C. § 2243; *Adorno*, 876 F.3d at 920.

2.    <u>Petitioner's Sentence Does Not Violate the Eighth Amendment</u>.

Petitioner advances a single claim: that, because the Illinois Truth in Sentencing law requires Petitioner to serve 100% of the sentence imposed for the criminal conduct he engaged in as a juvenile, the law is unconstitutional as applied to him. Petitioner contends he should be able to earn day-for-day credit, which, if applied, would make him eligible for immediate release because he has served more than one-half of his 40-year sentence. (Dkt. 93, pg. 8.) As his principal support, Petitioner cites *Miller* for the rule that the Eighth Amendment bars a mandatory life sentence (without the possibility of parole) based on juvenile criminal conduct. 567 U.S. at 479.

*Miller* is predicated upon an understanding that "children are constitutionally different from adults for purposes of sentencing," resulting in them having "diminished culpability and greater prospects for reform . . . ." 567 U.S. at 471 (citing *Graham v. Florida*, 560 U.S. 48, 68 (2010)). This conclusion flowed from the Supreme Court's recognition that "developments in psychology and brain science continue to

14

show fundamental differences between juvenile and adult minds," including "parts of the brain involved in behavior control." *Miller*, 567 U.S. at 471-72 (quoting *Graham*, 560 U.S. at 68). Put another way, the rule in this area of the law is that "children are different" for purposes of sentencing. *McKinley v. Butler*, 809 F.3d 908, 909 (7th Cir. 2016).

As a matter of constitutional law, *Miller* requires that a sentencing judge must consider the "children are different" standard before imposing on a juvenile convicted of murder an explicit life sentence (or, as discussed below, a *de facto* life sentence) without the possibility of parole. *Miller*, 567 U.S. at 480; *McKinley*, 809 F.3d at 910-12. But *Miller* also made clear that there is not a *categorical* constitutional ban on sentencing a juvenile murderer to life without parole; rather, all that is required is that the defendant's status as a juvenile offender be considered by the sentencing judge before imposing a life sentence. 567 U.S. at 479, 483.

Of critical relevance, Petitioner does not challenge the performance of the judge who sentenced him. No transcript of the sentencing is included in the record of this case. Thus the Court could not, in any event, review whether the sentencing judge properly considered Petitioner's youth when imposing sentence. In view of the absence of evidence concerning the judge's performance, it may be that Petitioner— now acting *pro se*—seeks relief under the rule of *Graham v. Florida*. 560 U.S. 48, 68 (2010). In *Graham*, the Supreme Court precluded life imprisonment without the possibility of parole for nonhomicide juvenile crimes: a state "need not guarantee the offender [in nonhomicide crimes] eventual release, but if it imposes a sentence of life

it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id*. In other words, the prisoner must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id*. at 75. Given Petitioner's emphasis on the requirements of the Truth in Sentencing law of Illinois which mandates Petitioner serve 100% of his sentence, it may be possible to construe the Amended Petition as appealing to *Graham*'s emphasis on the need to provide a "meaningful opportunity to obtain release." *Id*.

Whether Petitioner's claim is best viewed as arising under *Miller*, *Graham*, or some combination of those and other binding authorities, the net result is that Petitioner is not entitled to habeas relief. Taking *Graham* first, it does not control for the straightforward reason that Petitioner was convicted of murder, and *Graham* is limited to nonhomicide crimes. *See Miller*, 567 U.S. at 473 (citing *Graham*, 560 U.S. at 69) ("To be sure, *Graham's* flat ban on life without parole applied only to nonhomicide crimes, and the Court took care to distinguish those offenses from murder, based on both moral culpability and consequential harm"); *Rainer v. Hansen*, 952 F.3d 1203, 1207 (10th Cir. 2020) ("*Graham's* holding is limited to offenders convicted of nonhomicide offense"); *Atkins v. Crowell*, 945 F.3d 476, 479 (6th Cir. 2019) (same).

*Graham* and *Miller* certainly are both based on the "children are different" standard. *See Sanders v. Eckstein*, 981 F.3d 637, 643 (7th Cir. 2020) (recognizing *Miller*'s "children are different" standard). But *Miller* explained that life without the possibility of parole is still constitutional for juvenile murders so long as the sentencing court considered the juvenile's age when imposing the sentence. *See Miller*, 567 U.S.

at 480. Petitioner, it bears repeating, challenges only the portion of the Truth in Sentencing law requiring him to serve 100% of his sentence, not the sentencing judge's decision to impose a (potentially) *de facto* life sentence. *See Kelly v. Brown*, 851 F.3d 686, 687-88 (7th Cir. 2017) (where "sentencing court had considerable leeway in fashioning [a] sentence and in fact considered [the defendant's] age when deciding on the appropriate term," prisoner "was afforded all that he was entitled to under *Miller*"). Because *Graham* does not apply in the context of a homicide conviction, it does not, therefore, support habeas relief here.

Whether *Miller* applies is a closer—but, ultimately, not close—question. In the Seventh Circuit, *Miller*'s rule applies not only to explicit life sentences, but also to sentences of so many years that they may fairly be viewed as constituting *de facto* life sentences. *McKinley*, 809 F.3d at 909 (applying *Miller* to Illinois sentence when prisoner committed murder at age 16 and would not be eligible for release until age 116). No precise metric governs how long a sentence must be to constitute a *de facto* life sentence. But the Seventh Circuit has repeatedly held that juveniles who would first be eligible for release starting in their fifties (or even their seventies) did not receive *de facto* life sentences. *See, e.g., Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017) (16-year-old who would first be eligible for parole at 70 did not receive *de facto* life sentence); *Sanders*, 981 F.3d at 643 (juvenile first eligible for release at age 51 did not receive *de facto* life sentence); *see also Krol v. Calhoun*, No. 16-cv-11595, 2019 WL 5592757, at *14 (N.D. Ill. Oct. 30, 2019) (35-year murder sentence resulting in release of juvenile offender at age 56 not a *de facto* life sentence under *Miller*).) In the light

of these precedents, the Court holds that Petitioner's 40-year sentence—which will require Petitioner's incarceration until at least age 57—is not a *de facto* life sentence. And without a life sentence at issue, this Court cannot find that the Eighth Amendment violation identified in *Graham* and *Miller* justifies habeas relief for Petitioner. *See Sanders*, 981 F.3d at 643-44 ("Future cases will likely test what it means for a person to have a meaningful opportunity for release under the teachings of *Graham*. So, too, may future cases make clear the outer limits of a sentencing judge's discretion to punish juvenile offenders under *Miller*. But lower federal courts do not enjoy the benefit of foresight . . . We decide this appeal strictly within the confines of today's clearly established federal law as determined by the Supreme Court").

Petitioner's claim fails for an additional, distinct reason: he does not contend that the sentencing judge failed to take Petitioner's youth into account when imposing the 40-year murder sentence. That *might* have been so, but the record developed before the state courts and here is, at best, ambiguous. Having chosen to frame his argument in categorical terms under *Graham* and *Miller*, Petitioner is bound to the contours of those decisions.

To sum up: (1) *Miller* applies only to *de jure* and *de facto* life sentences for murder, but Petitioner did not receive a life sentence; (2) unlike *Graham*, *Miller* does not endow a juvenile convicted of murder a meaningful opportunity to obtain early release based on maturity and rehabilitation; (3) although *Graham* mandates that a juvenile offender be afforded the right to seek early release from a term of life imprisonment, the rule pertains only to nonhomicide crimes; and (4) the linchpin of *Miller*'s

"children are different" standard was the requirement that a sentencing court meaningfully consider a juvenile offender's youth before imposing a life sentence without the possibility of parole, but Petitioner does not challenge the sentencing judge's performance. Based on these circumstances, the Court is compelled to hold that the Illinois Truth in Sentencing law, as applied to Petitioner, does not offend the Eighth Amendment's prohibition on cruel and unusual punishments. Accordingly, Petitioner is not entitled to habeas relief.

In closing, the Court must address Petitioner's reliance upon *Montgomery*. (*See* Dkt. 58, pg. 4 (citing 577 U.S. at 208-12.) *Montgomery* explained that a "State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 577 U.S. at 212. Contrary to Petitioner's suggestion, *Montgomery* does not require that *all* juvenile homicide offenders receive a shot at parole. Rather, it provides only that a state can "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.* So long as the sentence was imposed *ab initio* in accordance with *Miller*, *Montgomery* reaffirms that life without the possibility of parole is a permissible sentence for a juvenile who commits murder. *Id.* For the reasons provided above, the Court cannot find that Petitioner's sentence violated *Miller*; as a result, *Montgomery*'s discussion of the parole remedy does not govern this case.

## C.     Certificate of Appealability and Notice of Appeal Rights

Having denied the Amended Petition, the Court declines to issue a certificate of appealability. In the Court's view, Petitioner cannot make a substantial showing of the denial of a constitutional right—*i.e.*, that reasonable jurists could debate this Court's resolution of Petitioner's claims. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal

until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## III. CONCLUSION

For the reasons above, the Court denies the Amended Petition (Dkt. 58) and declines to issue a certificate of appealability. All remaining motions are dismissed as moot. A final judgment order will be entered separately.

SO ORDERED.

Date: May 18, 2021

JOHN F. KNESS
United States District Judge